United States District Court
Southern District of Texas
**ENTERED**
February 28, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| LISA LAROCCA, | § § § § § § § § § § § | |
| Plaintiff. | | |
| V. | | CIVIL ACTION NO. 3:20-cv-00134 |
| ALVIN INDEPENDENT SCHOOL DISTRICT | | |
| Defendant. | | |

## **MEMORANDUM AND RECOMMENDATION**

Before me is Alvin Independent School District's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rule 12(b)(1) & (6) ("Motion to Dismiss"). *See* Dkt. 51. Having considered the motion, the relevant case law, and the parties' oral arguments, I recommend the Motion to Dismiss be **DENIED**.

## BACKGROUND

Plaintiff Lisa LaRocca ("LaRocca") is an American citizen of Italian descent. From 2015 to 2019, she worked for Alvin Independent School District ("AISD") as a teacher. In her Second Amended Complaint, LaRocca brings, in effect, three causes of action. First, LaRocca claims AISD discriminated against her on the basis of her national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Second, LaRocca claims AISD retaliated against her on the basis of her national origin in violation of Title VII. Third, LaRocca claims AISD violated Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act") and Title II of the Americans with Disabilities Act ("ADA") by retaliating against her for opposing AISD's alleged "violations of special education law and the failure of AISD to comply with the requirements of state and federal law relating to children with disabilities." Dkt. 48 at 17–18. AISD has moved to dismiss LaRocca's claims

for failure to exhaust administrative remedies with the Equal Employment Opportunity Commission ("EEOC") and failure to state a claim.

## LEGAL STANDARDS

### A.   FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

When evaluating a motion to dismiss for failure to state a claim, a court accepts "all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 675 (5th Cir. 2020) (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotation omitted). Under this standard, a district court must demand "more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotations omitted). Dismissals under Rule 12(b)(6) are "disfavored." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). In ruling on a motion to dismiss, my "review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### B.   TITLE VII EXHAUSTION REQUIREMENT

"Before filing a claim under Title VII in federal court, plaintiffs must first exhaust their administrative remedies by filing a charge of discrimination with the [EEOC] within a statutorily mandated time period." *Wiggins v. Golden Corral Corp.*, 802 F. App'x 812, 814 (5th Cir. 2020) (quotation omitted). "Administrative exhaustion for Title VII claims is mandatory (but not jurisdictional), and courts will dismiss claims not properly exhausted." *Id.* (cleaned up).[1] To determine

---

[1] AISD's Motion to Dismiss also references Rule 12(b)(1), which allows a party to challenge the district court's exercise of subject matter jurisdiction. Rule 12(b)(1) is inapplicable here. "Federal courts exercise jurisdiction over Title VII actions pursuant to 28 U.S.C. § 1331's grant of general federal-question jurisdiction, and Title VII's own jurisdictional

whether a claim has been presented to the EEOC that satisfies the exhaustion requirement, a district court asks not only what is included in "the scope of the administrative charge itself, but [also] the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Melgar v. T.B. Butler Publ'g Co.*, 931 F.3d 375, 379 (5th Cir. 2019) (quotation omitted).

## ANALYSIS

### A. LaRocca Has Statutory Standing to Bring Claims Under the Rehabilitation Act and Title II of the ADA

AISD first argues that LaRocca lacks standing to bring a retaliation claim under the Rehabilitation Act and Title II of the ADA. The ADA prohibits an employer from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The Rehabilitation Act expressly incorporates the ADA "to determine whether [the Rehabilitation Act] has been violated in a complaint alleging employment discrimination." 29 U.S.C. § 794(d).

AISD asserts that the Fifth Circuit has yet to recognize an individual's ability to bring a retaliation claim under these statutes "for advocating on behalf of a separate protected individual." Dkt. 51 at 15. AISD is correct. The Fifth Circuit has

---

provision. . . . [T]he Act's charge-filing requirement[s] . . . do not speak to a court's authority, or refer in any way to the jurisdiction of the district courts." *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1850–51 (2019) (cleaned up). As such, a Title VII claim should be dismissed for failure to state a claim under Rule 12(b)(6) when a plaintiff fails to exhaust administrative remedies. *See Ganheart v. Brown*, 740 F. App'x 386, 389 (5th Cir. 2018). Similarly, AISD's claim that LaRocca lacks a legislatively conferred cause of action under the Rehabilitation Act and Title II of the ADA does not implicate subject matter jurisdiction. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014); *see also Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 666 (5th Cir. 2020) ("Unlike Article III standing, statutory standing is not jurisdictional. Instead, it asks the merits question of whether or not a particular cause of action authorizes an injured plaintiff to sue." (quotation omitted)). "[A] dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).

not addressed this issue. But numerous district courts—and three circuits—have expressly held, in accordance with the statutory language, "that advocating for members of a protected class is a protected activity for purposes of retaliation claims" under the Rehabilitation Act and the ADA. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 662 (6th Cir. 2020); *see also Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1132 (10th Cir. 2010) (holding that "advocacy on behalf of disabled students constitute[s] protected activity under the Rehabilitation Act"); *Barker v. Riverside Cnty. Off. of Educ.*, 584 F.3d 821, 826 (9th Cir. 2009) (remarking that "empathetic people who teach and interact frequently with the disabled are those most likely to recognize their mistreatment and to advocate on their behalf" in holding that teachers advocating for disabled students was a protected activity under the Rehabilitation Act). AISD points to no contrary case law and offers no reason why I should disregard that all circuits to have considered the issue have held that advocating for the rights of disabled students constitutes protected activity under the Rehabilitation Act and the ADA. Because I am convinced that the Fifth Circuit, once confronted with this issue, will reach a similar conclusion as its sister circuits, I reject AISD's standing argument.

**B.  EXHAUSTION OF ADMINISTRATIVE REMEDIES**

### *1. There Is No Requirement to Exhaust Administrative Remedies under the Rehabilitation Act or Title II of the ADA*

AISD argues LaRocca failed to exhaust her retaliation claim under the Rehabilitation Act and the ADA. This argument is dead on arrival. The Fifth Circuit has repeatedly held that there is no exhaustion requirement under the Rehabilitation Act for claims against a federal grantee, like AISD. *See Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015); *Prewitt v. U.S. Postal Serv.*, 662 F.2d 311, 314 (5th Cir. Unit A Nov. 1981). Because Title II of the ADA adopts the "the remedies, procedures, and rights as set forth in [the Rehabilitation Act]," 42 U.S.C. § 12133, there is also no exhaustion requirement under Title II of the ADA. *See Meriweather v. ABC Training/Safety Council Tex. Gulf Coast Chapter*,

4

No. 3:15-cv-862, 2016 WL 8711726, at *3 (N.D. Tex. Oct. 24, 2016) ("Unlike Title I, neither Title II nor Title III of the ADA requires that a plaintiff file an administrative complaint with the EEOC or otherwise exhaust state or federal administrative remedies before filing a lawsuit.").

### 2. *LaRocca Has Exhausted Her Administrative Remedies for Her Title VII National Origin Discrimination Claim*

AISD next argues that LaRocca failed to exhaust her Title VII national original discrimination claim prior to filing this lawsuit.[2] In evaluating the exhaustion issue, I must decide whether LaRocca's national origin discrimination claim could "reasonably be expected to grow out of" the factual allegations asserted in her EEOC charge. *Melgar*, 931 F.3d at 379.

On September 20, 2019, LaRocca submitted an EEOC Form 5 Charge of Discrimination, which included a two-page Addendum describing the particulars of her discrimination claim ("the Charge"). LaRocca checked the following boxes:

```
DISCRIMINATION BASED ON (Check appropriate box(es) )
[X] RACE    [ ] COLOR    [X] SEX    [ ] RELIGION    [ ] NATIONAL ORIGIN
[X] RETALIATION    [X] AGE    [ ] DISABILITY    [ ] GENETIC INFORMATION
[ ] OTHER (Specify)
```

Dkt. 51-1 at 2. Notably, LaRocca did not check the national origin box, even though a lawyer prepared and submitted the Charge on her behalf. *See id*. LaRocca argues her failure to check the national origin box is not fatal to her national origin claim because the Charge contains factual allegations implicating a national origin claim. Specifically, LaRocca contends that her statements that she is an "American female of Italian de[s]cent" and that "Alvin ISD discriminated against [her] by treating

---

[2] To be clear, LaRocca has asserted both a national origin discrimination claim *and* a national origin retaliation claim in this action. The Fifth Circuit has held that LaRocca exhausted her administrative remedies for her retaliation claim. *See LaRocca v. Alvin Indep. Sch. Dist.*, No. 21-40043, 2022 WL 1001442, at *3 (5th Cir. Apr. 2, 2022).

[her] unfavorably because of [her] race and ethnicity" are sufficient to exhaust her administrative remedies. *Id.* at 4.

The Charge does not allege facts sufficient to implicate a national origin claim. Of note, LaRocca does not discuss or identify her national origin in the paragraph where she uses the term "ethnicity." Indeed, LaRocca only mentions that she is an "American female of Italian de[s]cent" in the first sentence of the Addendum, and certainly never links that heritage to AISD's alleged misbehavior. *Id.* In the sole paragraph of the Charge where LaRocca uses the term "ethnicity," she asserts that AISD discriminated against her because of her New York and Brooklyn mannerisms—not because of her Italian heritage. Overall, nothing suggests the national origin discrimination claim asserted in this lawsuit could reasonably be expected to grow out of the factual allegations asserted in the Charge.

But my inquiry does not end there. LaRocca argues I must also look at an "EEOC Claim Form" she submitted to the EEOC on September 5, 2019, roughly two weeks before she filed the Charge.[3] The EEOC Claim Form is a six-page document prepared and signed by LaRocca's counsel, providing information related to LaRocca's claims of discrimination. In that document, LaRocca's counsel clearly checked a box complaining of discrimination based on national origin:

| X | **Discrimination based on national origin:** |
|---|---|
| | National Origin Discrimination |
| | National Origin Discrimination & Work Situations |
| | National Origin & Harassment |
| | National Origin & Employment Policies/Practices |

---

[3] AISD asserts that I should not consider the EEOC Claim Form because it is not referenced in Second Amended Complaint. This argument falls on deaf ears because the EEOC Claim Form is, in fact, mentioned in LaRocca's live pleading. LaRocca specifically alleges that her national origin discrimination "claim was presented to the EEOC in a claim form." Dkt. 48 at 16.

Dkt. 30-1 at 18.

LaRocca maintains the EEOC Claim Form should be treated as part of her charge of discrimination, and that by checking the "[d]iscrimination based on national origin" box, she has exhausted her administrative remedies. AISD, on the other hand, insists the EEOC Claim Form should not be considered part of LaRocca's administrative charge.

In *Federal Express Corp. v. Holowecki*, the United States Supreme Court held that "a filing [with the EEOC] is to be deemed a charge" if it both satisfies the regulatory requirements of a charge and may "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." 552 U.S. 389, 402 (2008). One of the regulatory requirements of an EEOC charge is that it be verified.[4] *See* 29 C.F.R. § 1601.9. Although LaRocca's EEOC Claim Form is signed by her counsel, it is not verified as required by EEOC regulations. The Charge, however, is verified.

Except for the lack of an initial verification, the EEOC Claim Form satisfies the EEOC's charge requirements because it "identif[ies] the parties" and "describe[s] generally the action or practices complained of." 29 C.F.R. § 1601.12(b). Because the EEOC Claim Form includes a sub-heading stating that it is a "Charge of Discrimination," it also may be reasonably interpreted as a request for the EEOC to take remedial action on LaRocca's behalf. Dkt. 30-1 at 18.

At first blush, LaRocca's failure to verify the EEOC Claim Form could be viewed as fatally defective. But the Fifth Circuit has addressed this exact situation: that is, what happens when an initial unverified EEOC submission is followed by an EEOC Form 5 Charge of Discrimination signed under penalty of perjury. *See EEOC v. Vantage Energy Servs., Inc.*, 954 F.3d 749, 756 (5th Cir. 2020). Noting

---

[4] "Verified" means "sworn to or affirmed before a notary public, designated representative of the [EEOC], or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a).

7

that the verification requirement is intended "to 'protect[] employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury,'" the Fifth Circuit observed that this purpose "is not disturbed so long as the employee verifies the claim 'by the time the employer is obliged to respond to the charge.'" *Id.* (quoting *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 113 (2002)). For that reason, the Fifth Circuit held that a "later verification [in a EEOC Form 5] cures" the employee's failure to initially verify a submission "that qualifies as a charge." *Vantage Energy Servs.*, 954 F.3d at 756; *see also* 29 C.F.R. § 1601.12(b) ("A charge may be amended to cure technical defects or omissions, including failure to verify the charge."). Accordingly, LaRocca's verification—via her attorney—of the Charge should extend to the EEOC Claim Form, thus satisfying the verification requirement, even though the EEOC Claim Form was not originally submitted to the EEOC under oath. *See Melgar*, 931 F.3d at 380 n.4 (noting that a failure to sign and verify an administrative charge "is not fatal in that the regulations allow technical defects to be cured by filing an amended charge, and the amended charge would relate back to the date the charge was first received") (citing 29 C.F.R. § 1601.12(b)).

     Having concluded that I may, indeed, review the EEOC Claim Form to determine if LaRocca has exhausted her administrative remedies, I must now examine whether that document put AISD on notice of "the existence and nature of the charges against" it. *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984). I fully recognize that the EEOC Claim Form is devoid of any substantive factual allegations describing any national origin discrimination LaRocca encountered. But, at the same time, "[b]y checking the [discrimination based on national origin] box on her [EEOC Claim Form], LaRocca certainly put her employer on notice that she was alleging" national origin discrimination. *LaRocca*, 2022 WL 1001442, at *3. I acknowledge that the EEOC Claim Form and the Charge are inherently inconsistent: the EEOC Claim Form indicates that LaRocca is pursuing a national

origin discrimination claim, while the Charge indicates that she is not pursuing a national origin discrimination claim. Nevertheless, construing the scope of LaRocca's charge liberally, as I must, I conclude that her national origin discrimination claim "could reasonably be expected to—and in fact did—grow out of [her] charge of discrimination." *Patton v. Jacobs Eng'g Grp.*, 874 F.3d 437, 444 (5th Cir. 2017). Thus, LaRocca has properly exhausted her administrative remedies for her national origin discrimination claim.

C. **LAROCCA STATES A VIABLE CLAIM FOR RETALIATION UNDER TITLE VII, THE REHABILITATION ACT, AND TITLE II OF THE ADA**

AISD also argues that LaRocca has failed to plead factual allegations that would support her retaliation claim under Title VII, the Rehabilitation Act, and Title II of the ADA.

To establish a prima facie claim of retaliation under all three statutes, LaRocca must plead that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *See January v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023) (listing elements for a retaliation claim under the Rehabilitation Act and Title II of the ADA); *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017) (listing elements for a Title VII retaliation claim).

1. *Protected Activity Under the Rehabilitation Act and Title II of the ADA*

AISD asserts that LaRocca has not alleged a protected activity under the Rehabilitation Act and Title II of the ADA. To engage in a protected activity under the Rehabilitation Act or Title II of the ADA, LaRocca must have (1) opposed a practice prohibited by the statutes; or (2) participated in any manner in a proceeding under the statutes. *See Haynes v. Penzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000). LaRocca must also have had "at least a reasonable belief that the practices she opposed were unlawful" under the Rehabilitation Act or Title II of the ADA. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (quotation omitted).

9

"It is clear from the case law that protected activity does not include mere assistance of special education students, but, rather, requires affirmative action in advocating for, or protesting discrimination related to, unlawful conduct by others." *Montanye v. Wissahickon Sch. Dist.*, 218 F. App'x 126, 131 (3d Cir. 2007); *see also Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (finding that "protected conduct" contemplates such activity as "making complaints to management," "writing critical letters," "protesting against discrimination," and "expressing support of co-workers"). "[A]ttempting to protect the rights of special education students constitutes protected activity under the Rehabilitation Act [and Title II of the ADA]." *Reinhardt*, 595 F.3d at 1132.

AISD argues that LaRocca's allegations merely indicate that she assisted special education students, as opposed to attempting to protect the rights of such students. Not so. According to the Second Amended Complaint, LaRocca worked as a teacher at Alvin High School during the 2018–2019 school year. In September 2018, LaRocca claims she twice discovered and reported errors in the special education paperwork for many students. These errors, LaRocca avers, constituted violations of special education laws. As a result of reporting this situation to her superiors, LaRocca contends "the special education department became openly hostile to" her and made false allegations that she threatened a co-worker. Dkt. 48 at 4. In October 2018, LaRocca alleges she was improperly denied access to software necessary for her to do her job and ensure compliance with special education laws. She also insists that she made a report about this access denial to the school administration. In December 2018, after noticing that a special education student's Individual Education Plan was not being followed, as required by federal law, LaRocca says she raised the issue with a senior member of the school administration, but was summarily dismissed. All in all, LaRocca claims that her efforts to ensure that AISD complied with federal special education laws turned disastrous. Instead of thanking her for identifying areas of noncompliance with special education laws and working to cure the deficiencies, LaRocca claims

AISD tried to get her fired, coerced her into resigning (before she retracted her resignation), and then improperly removed her from Alvin High School. LaRocca asserts that she was later vindicated when, in March 2019, the Texas Education Agency found that Alvin High School was out of compliance with special education laws.

As alleged in the Second Amended Complaint, LaRocca repeatedly complained to AISD officials about the school district's failure to comply with special education laws. These alleged actions—challenging and reporting violations of special education law—fall squarely within protected activity under both the Rehabilitation Act and Title II of the ADA. Consequently, LaRocca has adequately alleged that she engaged in protected activity.

### 2. *Causal Connection*

AISD also argues that LaRocca fails to sufficiently plead a causal connection between the alleged protected activity and an adverse employment action. To establish the requisite causal connection between the protected activity and the adverse employment action, the United States Supreme Court has held that LaRocca must show that "her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). "Often, events have multiple but-for causes." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020). "So, for example, if a car accident occurred *both* because the defendant ran a red light *and* because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision." *Id.* "When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision." *Id.*

As far as her Title VII national origin retaliation claim is concerned, LaRocca alleges in the Second Amended Complaint that she "encountered hostility from her co-workers because of her Italian ethnicity." Dkt. 48 at 2. When she complained about how her co-workers treated her, LaRocca avers that AISD's assistant

principal retaliated against her "by changing her job duties and assignments, as well as imposing conditions on her that were not imposed on other employees." *Id.* at 17. "[A]ccept[ing] all well-pled facts as true" and "construing all reasonable inferences in the complaint in the light most favorable to" LaRocca, as I am required to do at this early pleading stage, I conclude that LaRocca's allegations, as set forth in the Second Amended Complaint, are sufficient to meet the but-for causation standard. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023). To the extent AISD does not believe that LaRocca cannot satisfy the but-for causation standard, it may move for summary judgment on that issue at the appropriate time.

The same is true for LaRocca's retaliation claims under the Rehabilitation Act and Title II of the ADA. As detailed above, LaRocca's Second Amended Complaint is replete with allegations that she reported violations of special education law to AISD officials, and then those same officials retaliated against her for making such reports. At this early juncture of the case, she has done more than enough to meet her pleading burden on but-for causation.

D. **LAROCCA STATES A VIABLE CLAIM FOR TITLE VII NATIONAL ORIGIN DISCRIMINATION**

Next, AISD asks me to dismiss LaRocca's Title VII discrimination claim based on her national origin, which she brings on separate theories of disparate treatment and a hostile work environment. AISD argues that LaRocca has failed to allege facts required to state a national origin discrimination claim under Title VII.

"[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (quotation omitted). To state a claim for a hostile work environment, LaRocca must allege that she (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the claimed harassment was based on her protected characteristic; (4) the claimed harassment affected a term, condition, or privilege of employment; and (5) the employer knew

or should have known of the harassment and failed to take prompt remedial action. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). For the harassment to affect a term or condition of employment, the harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Lauderdale v. Tex. Dep't of Crim. Just., Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (cleaned up).

LaRocca easily satisfies her pleading burden at the motion to dismiss stage. In the Second Amended Complaint, LaRocca explains that coworkers, both superiors and equals, made derogatory remarks to her and about her based on her Italian heritage. She describes repeated mocking of her Italian accent as severe and pervasive. This discrimination, LaRocca continues, ultimately led to her termination. In short, the live pleading sufficiently alleges that AISD knew of the harassment and did not take any meaningful remedial action. Thus, this claim should be permitted to proceed.

### E.   LAROCCA STATES A CLAIM FOR INJUNCTIVE RELIEF

In addition to monetary damages, LaRocca requests "equitable relief to eliminate any negative job references from her record." Dkt. 48 at 17, 19. AISD argues LaRocca is barred from obtaining such injunctive relief because she concedes that she is no longer employed by AISD. This argument is misplaced. The fact that LaRocca no longer works for AISD is of no moment to her claim for injunctive relief. A plaintiff "seeking injunctive relief must show a continuing or threatened future injury to" herself. *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019). LaRocca claims her request "to have adverse information expunged from her record as a teacher . . . is necessary to purge the ongoing effects of AISD's violations of law." Dkt. 52 at 10. For now, LaRocca has satisfied her pleading burden and may proceed with her claim for injunctive relief. The merits of such a claim will be addressed at a future date.

## CONCLUSION

For the reasons discussed above, I recommend the Motion to Dismiss (Dkt. 51) be **DENIED**.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 28th day of February 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE